UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHIRLEY HARRIS,

Plaintiff,

-vs-                                                        Case No. 6:01-cv-254-Orl-22JGG

HOUSING AUTHORITY OF THE CITY
OF DAYTONA BEACH,

Defendant.

## PRELIMINARY INJUNCTION AND ORDER

### I. INTRODUCTION

This cause comes before the Court for consideration of a Motion for Preliminary Injunction (Doc. 2) filed by Plaintiff Shirley Harris on February 27, 2001. By means of this motion, Harris seeks an injunction prohibiting Defendant Housing Authority of the City of Daytona Beach from evicting her from public housing. Harris contends the Housing Authority improperly denied her an earned income disallowance, pursuant to 42 U.S.C. § 1437a(d) and 24 C.F.R. § 960.255, resulting in impermissible rent increases and an ensuing determination of default in rent payments.[1] Harris also asserts that the Housing Authority employs an illegal policy of automatically imposing legal fees and court costs on tenants against whom eviction is sought, even when a court has not yet assessed those fees and costs.

---

[1] The earned income disregard is discussed in greater detail in part IV.A.1. of this Order. Broadly speaking, it prevents a housing authority from immediately raising a previously-unemployed tenant's rent after the tenant begins receiving increased income from employment.

Upon considering the parties' submissions, the Court determines that Harris is entitled to a preliminary injunction.[2]

## II. PRELIMINARY INJUNCTION STANDARD

"A district court may grant preliminary injunctive relief only if the moving party shows four things: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Delta Air Lines, Inc. v. Air Line Pilots Ass'n Intern.*, 238 F.3d 1300, 1308 n.18 (11th Cir. 2001), *reh'g and reh'g en banc denied,* – F.3d – (11th Cir. Feb. 9, 2001)(Table, No. 00-16472-BB).

## III. FACTS

As previously noted, the relevant facts are not in dispute. Harris has been a tenant of the Housing Authority since October of 1997. In July 1998, Harris was injured as a result of an accident. Because Harris was unable to return to work, she was eventually laid off from her job at a community college. Thereafter, the Housing Authority reduced Harris's rent to zero. In mid-August 1999, Harris began part-time employment with Volusia County in its Head Start Program. She was limited to working 20 hours per week at a pay rate of $5.15 per hour.

---

[2] The relevant facts are not in dispute and the parties have been afforded an ample opportunity to present their legal positions. Accordingly, an oral preliminary injunction hearing is unnecessary. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir.), *cert. denied,* 519 U.S. 821 (1996); *Commerce Park at DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334, 341 (5th Cir. 1984)

On October 18, 1999, the Housing Authority raised Harris's rent from zero to $134.00 monthly, effective December 1, 1999. The rent adjustment notice also indicated that a "retroactive" amount of $134.00 was due.

On November 8, 1999, Harris assumed full-time employment with Volusia County as a Teacher I; her hourly rate was increased to $6.0836.

In late November 1999, the Housing Authority served Harris with an eviction complaint. On January 5, 2000, the Authority notified Harris that it was increasing her monthly rent to $316.00, effective March 1, 2000. At about the same time, Harris entered into a settlement stipulation in the eviction action, which recited that Harris's "total arrears and court costs" amounted to $834.21. Doc. 1, Ex. 11, ¶ 1, at 1. The settlement stipulation obligated Harris to pay the Housing Authority the sum of $344.00 and "all ongoing rent, late charges, excess utilities and repairs coming due hereafter in a timely manner." *Id.*, ¶ 4 & 5, at 1-2.[3]

On November 3, 2000, the executive director of the Housing Authority held a hearing concerning Harris's eligibility for earned income disregard. Afterwards, the executive director wrote a letter to the Jacksonville Office of the U.S. Department of Housing and Urban Development ("HUD"), seeking a "legal interpretation" concerning Harris's eligibility for the earned income disallowance. The Housing Authority's letter described the circumstances as follows:

> The claim being made is that the resident was unemployed twelve months previous to becoming employed on August 16, 1999. The resident earned no more than would be received for 10 hours of

---

[3] Harris maintains this settlement agreement was fraudulently induced based on the Housing Authority's alleged misrepresentations concerning her monetary rental obligation (i.e., failing to inform her of her entitlement to earned income disregard) and her liability for certain assertedly impermissible costs.

-3-

> work per week for 50 weeks at the established minimum wage and this would qualify under the income disregard.
>
> The Housing Authority's [sic] doesn't dispute this. But the fact that the resident started working August 16, 1999 and that this provision concerning income disregard did not come into effect until October 1, 1999, thus making this resident ineligible under the new law.

Doc. 22, Ex. 3.

The director of HUD's Jacksonville Area Public Housing Office replied with a letter stating, in pertinent part:

> The Final Rule to Changes to Admission and Occupancy Requirements in the Public Housing and Section 8 Housing Assistance Programs, printed on March 29, 2000, does not provide specific guidance on the particular situation described in your letter.
>
> This Office has interpreted the regulation to mean that any resident of Public Housing on or after the effective date of the rule, October 1, 1999, would receive an income disregard, when their annual income increased as a result of employment, after the effective date of the rule. The example you cite in your letter indicated that the individual was employed prior to the effective date of the rule. This resident would not be entitled to an income disregard. If this individual had begun employment any time after October 1, 1999, and had been unemployed for the previous twelve months, they would qualify for the income disregard.
>
> We applied two tests to this situation:
>
> 1. Was this a "Qualified Family"? To be qualified, the family must be residing in public housing.
>
> 2. Was the person unemployed on or after the effective date of the rule for the previous twelve months and has their income subsequently been increased as a result of employment?
>
> It is the accepted policy of HUD to establish an effective date for rules. The rules do not apply to situations before the effective date, unless specifically stated in the text of the rule published in the Federal Register.

-4-

Doc. 22, Ex. 2. After receiving this letter from HUD's Jacksonville Office, the Housing Authority wrote Harris's attorney, notifying her of HUD's interpretation and the Housing Authority's decision that Harris was ineligible for earned income disregard. *See* Doc. 22, Ex. 1.

On February 8, 2001, the Housing Authority served Harris with a lease termination notice. The notice advised Harris that she owed rent in the amount of $348.00 and that she had a specified time in which to pay that sum. The notice further advised Harris that if she did not timely pay her back rent or seek a grievance hearing, her lease would be terminated and she would have to vacate the premises.

On February 23, 2001, Harris received a telephone call from the Housing Authority reminding her that she would have to pay or move; Harris was asked if she was going to pay and was told if she did not, she would need to make arrangements to move or be evicted.

## IV. ANALYSIS

### A. Substantial Likelihood of Success on the Merits

<u>1. Earned Income Disallowance</u>

In pertinent part, 42 U.S.C. § 1437a(d), entitled "Disallowance of earned income from rent determinations," provides:

> (1) **In general**
>
> Notwithstanding any other provision of law, the rent payable under subsection (a) by a family described in paragraph (3) of this subsection may not be increased as a result of the increased income due to such employment during the 12-month period beginning on the date on which the employment is commenced.
>
> (2) **Phase-in of rent increases**

> Upon the expiration of the 12-month period referred to in paragraph (1), the rent payable by a family described in paragraph (3) may be increased due to the continued employment of the family member described in paragraph (3)(B), except that during the 12-month period beginning upon such expiration the amount of the increase may not be greater than 50 percent of the amount of the total rent increase that would be applicable but for this paragraph.
>
> (3) Eligible families
>
> A family described in this paragraph is a family –
>
> > (A) that –
> >
> > > (i) occupies a dwelling unit in a public housing project [and]
> > > * * *
> >
> > (B)(i) whose income increases as a result of employment of a member of the family who was previously unemployed for 1 or more years[.]
> > * * *
>
> (4) Applicability
>
> This subsection . . . shall apply beginning upon October 1, 1999[.]

Section 1437a(d) is implemented by 24 C.F.R. § 960.255. That regulation, entitled "Self-sufficiency incentives – Disallowance of increase in annual income," provides, in pertinent part:

> (a) Definitions. The following definitions apply for purposes of this section.
>
> Disallowance. Exclusion from annual income.
>
> Previously unemployed includes a person who has earned, in the twelve months previous to employment, no more than would be received for 10 hours of work per week for 50 weeks at the established minimum wage.
>
> Qualified family. A family residing in public housing:

> (i) Whose annual income increases as a result of employment of a family member who was unemployed for one or more years previous to employment[.]
>
> * * *
>
> (b) Disallowance of increase in annual income.
>
> (1) Initial twelve month exclusion. During the cumulative twelve month period beginning on the date a member of a qualified family is first employed or the family first experiences an increase in annual income attributable to employment, the PHA must exclude from annual income (as defined in § 5.609 of this title) of a qualified family any increase in income of the family member as a result of employment over prior income of that family member.
>
> (2) Second twelve month exclusion and phase-in. During the second cumulative twelve month period after the date a member of a qualified family is first employed or the family first experiences an increase in annual income attributable to employment, the PHA must exclude from annual income of a qualified family fifty percent of any increase in income of such family member as a result of employment over income of that family member prior to the beginning of such employment.

Harris has demonstrated a substantial likelihood that she will succeed on the merits of her claim that she is entitled to earned income disallowance. The interpretation the Housing Authority places on 24 C.F.R. § 960.255 ignores the definition of "previously unemployed" set forth in § 960.255(a): "Previously unemployed includes a person who has earned, in the twelve months previous to employment, no more than would be received for 10 hours of work per week for 50 weeks at the established minimum wage." It is undisputed that Harris was engaged in part-time work when the earned income disregard provision took effect on October 1, 1999; hence, she was "employed" in the ordinary sense of the word on that date. However, it is also undisputed that during the twelve month period prior to October 1, 1999, Harris earned no more than would be received for 10 hours of work per week for 50 weeks at the established minimum wage. Hence,

pursuant to 24 C.F.R. § 960.255(a), Harris continued to be unemployed on the effective date of the income disregard law. As a result, she was subsequently eligible for earned income disallowance; the Housing Authority cannot refuse to apply the disallowance to Harris in calculating her rent for purposes of lease termination or eviction.[4]

### 2. Automatic Assessments of Fees and Costs

The Housing Authority's Rent Policy provides that should a resident against whom an eviction action has been filed "wish to settle the suit out of court, resident payment shall include all past due rent, late fees, court filing fees, and other reasonable costs associated with the filing of the eviction." Doc. 1, Ex. 2, ¶ 2.c., at F-1. This provision runs afoul of *Miles v. Metropolitan Dade County*, 916 F.2d 1528 (11th Cir. 1990), *cert. denied*, 502 U.S. 898 (1991). In *Miles*, the Court of Appeals for the Eleventh Circuit interpreted 24 C.F.R. § 966.6(h)[5] as "evidenc[ing] an intent by HUD to allow the imposition of a court costs charge *only* when the PHA receives a court judgment against the tenant assessing costs." 916 F.2d at 1533 (emphasis in original). In other words, a public housing authority cannot "bill a tenant for court costs when no judgment has been

---

[4]The opinion letter issued by HUD's Jacksonville Area Public Housing Office does not compel a different result. That informal interpretation is entitled to some deference, but only to the extent that it has the "power to persuade." *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000). This Court is not persuaded. As noted above, even though Harris had taken a part-time job, she could not yet be considered "employed" as of the effective date of the earned income disregard provision because she still met the definition of "previously unemployed" set forth in § 960.255(a). The Housing Authority's cursory description of Harris's "employment" circumstances in its letter to HUD's Jacksonville Office may have caused the latter agency to erroneously believe Harris had assumed a full-time job prior to the provision's effective date.

[5]Section 966.6(h) prohibits a public housing authority from including in a lease a "[p]rovision that the tenant agrees to pay attorney's fees or other legal costs whenever the landlord decides to take action against the tenant even though the court determines that the tenant prevails in the action. Prohibition of this type of provision does not mean that the tenant as a party to the lawsuit may not be obligated to pay attorney's fees or other costs if he loses the suit."

entered imposing the charge on the tenant." *Id.* at 1534.[6] Accordingly, Harris has demonstrated a substantial likelihood of success on the merits of this aspect of her case, as well.[7]

### B. Irreparable Injury

This issue merits little discussion. Simply put, there is no more basic human need than shelter. It suffices to say that eviction from public housing of a person of Harris's financial means would constitute irreparable injury. Although the Housing Authority's attorney has lately represented that an eviction action "is not imminent," *see* Doc. 22, ¶ 1, at 1, the February 8th lease termination notice and the February 23rd follow-up call Harris received from the Housing Authority sufficiently establish a realistic threat of lease termination and/or eviction.

### C. Remaining Factors

The Court determines that the threatened harm to Harris outweighs any damage a preliminary injunction might cause the Housing Authority. The Court further concludes that the injunction Harris seeks will not be adverse to the public interest.

---

[6] A separate paragraph of the rent policy states: "Should the PHA be required to enforce the terms of the lease agreement through legal action, all related court costs, attorney fees, plus any outstanding indebtedness, will be included in the judgment." Doc. 1, Ex. 2, ¶3, at F-1. The Court does not construe this language as violating *Miles;* use of the word "judgment" indicates that a tenant would be liable for fees and costs under this provision only if the Housing Authority prevailed and was awarded a judgment.

[7] In its response to the motion for preliminary injunction, the Housing Authority states that Harris entered into the January 2000 settlement stipulation after a judgment was entered in the eviction action. Even if a judgment was entered against Harris with respect to her prior eviction matter, the record nevertheless reflects that the Housing Authority has automatically charged tenants for legal fees and costs *prior* to those sums actually being reduced to judgment. *See, e.g.,* Doc. 1, Exhibits 4 & 5 (notices stating that legal fees in the amounts of, respectively, $344 and $338 "will be placed on all unpaid accounts owed to the Daytona Beach Housing Authority" as of the 22nd or 23rd of each month).

**D. Bond**

Based on the nature of the relief sought, the minimal potential harm to the Housing Authority resulting from an injunction, and Harris's financial condition, the Court, in its discretion, determines that no bond is required.

## V. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. Plaintiff's Motion for Preliminary Injunction (Doc. 2), filed February 27, 2001, is GRANTED.

2. The Housing Authority of the City of Daytona Beach and officers, agents, servants, employees and attorneys, are hereby ENJOINED, until further Order of Court, from terminating Shirley Harris's lease and/or seeking to evict her for unpaid rent insofar as the alleged past due amount is based on (a) a determination that Harris is not entitled to earned income disregard and/or (b) legal fees and court costs assessed prior to imposition by a court.

3. Defendant's Motion to Dismiss Complaint for Failure to Join Indispensable Party (Doc. 20), filed April 2, 2001, is DENIED.

The relatively low-level, informal interpretive letter issued by HUD's Jacksonville office does not render HUD a party indispensable to this action. In that regard, this case is materially distinguishable from *Boles v. Greeneville Housing Authority*, 468 F.2d 476 (6th Cir. 1972). *Boles* involved HUD administrative action - approval of an urban renewal project for federal funding - far more significant than the agency's fairly minor involvement in the case at bar.[8] "Courts are

---

[8]This Court recognizes that the Eleventh Circuit and the former Fifth Circuit have cited *Boles* with approval in other contexts. *See Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 & n.6 (11th Cir. 1999); *Ranger Ins. Co. v. United Housing of New Mexico, Inc.*, 488 F.2d 682, 683 (5th Cir. 1974). Regardless, this Court does not apply

-10-

called upon daily to interpret federal laws and regulations. An agency does not become an indispensable party merely because a memorandum of its interpretation of a federal statute becomes an issue in a case. The fact that an agency may be able to lend its expertise to the interpretation of laws or regulations does not mandate its joinder as an indispensable party." *Dorsey v. Tompkins,* 917 F. Supp. 1195, 1200 (S.D. Ohio 1996) (determining Secretary of Health and Human Services not indispensable party).

In any event, if HUD is sufficiently interested in this case, it may seek intervention pursuant to Fed.R.Civ.P. 24. *See Dorsey,* 917 F. Supp. at 1200-01. To afford HUD an opportunity to consider the question of intervention, a copy of this Preliminary Injunction and Order will be mailed to the Director of HUD's Jacksonville Area Office, Office of Public Housing.

4. Plaintiff's Motion In Limine to Exclude the Use or Consideration of a November 12, 2000 Letter From John G. Niesz to the Executive Director of the Daytona Beach Housing Authority (Doc. 21), filed April 2, 2001, is DENIED.

**DONE and ORDERED** in Orlando, Florida this 25th day of April, 2001.

_____
ANNE C. CONWAY
UNITED STATES DISTRICT JUDGE

---

*Boles* here because the significantly greater involvement of HUD in *Boles* renders that decision materially distinguishable from the present action. The relative degree of HUD's involvement herein also distinguishes this case from others in which HUD has been deemed an indispensable party.

Copies furnished to:

Counsel of Record
Unrepresented Parties
John G. Niesz, Director
Jacksonville Area Office
Office of Public Housing
U.S. Department of Housing and Urban Development
301 West Bay Street
Suite 2210
Jacksonville, Florida 32202-5121

-12-

AO 72A
(Rev.8/82)